```
 1                    UNITED STATES DISTRICT COURT
                         DISTRICT OF MASSACHUSETTS
 2

 3    _____

 4    UNITED STATES OF AMERICA,

 5                         Plaintiff,        Criminal Action
                                             No. 19-10245-ADB
 6    V.
                                             January 9, 2023
 7    TONY JOHNSON,                          11:32 a.m.

 8                         Defendant.
      _____
 9

10

11              TRANSCRIPT OF CHANGE OF PLEA

12         BEFORE THE HONORABLE ALLISON D. BURROUGHS

13              UNITED STATES DISTRICT COURT

14           JOHN J. MOAKLEY U.S. COURTHOUSE

15                    1 COURTHOUSE WAY

16                   BOSTON, MA  02210

17

18

19

20
                DEBRA M. JOYCE, RMR, CRR, FCRR
21                 Official Court Reporter
                John J. Moakley U.S. Courthouse
22              1 Courthouse Way, Room 5204
                      Boston, MA  02210
23                  joycedebra@gmail.com

24

25
```

```
1    APPEARANCES:

2    FOR THE GOVERNMENT:

3    LAUREN A. GRABER, ESQ.
     US Attorney's Office - MA
4    J. Joseph Moakley U.S. Courthouse
     1 Courthouse Way
5    Suite 9200
     Boston, MA 02210
6    617-748-3100
     lauren.graber@usdoj.gov
7
     FOR THE DEFENDANT:
8
     JOAN MAFFEO FUND, ESQ.
9    245 First Street, Riverview II, Suite 1800
     Cambridge, MA 02142
10   617-945-9693
     joanmfund@gmail.com
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

<u>P R O C E E D I N G S</u>

        (The following proceedings were held in open court before the Honorable Allison D. Burroughs, United States District Judge, United States District Court, District of Massachusetts, at the John J. Moakley United States Courthouse, 1 Courthouse Way, Boston, Massachusetts, on January 9, 2023.

        The defendant, Tony Johnson, is present with counsel. The Assistant U.S. Attorney is present.)

        THE CLERK:  This is criminal matter 19-10245, <u>United States v. Tony Johnson</u>.

        Will counsel identify themselves for the record.

        MS. GRABER:  Good morning, your Honor.  Lauren Graber for the United States.

        MS. FUND:  And good morning, your Honor.  Joan fund for Mr. Johnson.

        THE COURT:  And I see Mr. Johnson is present.

        I hope your back is better.

        THE DEFENDANT:  Thank you.

        THE COURT:  I've had back pain.  I'm assuming you really did have back pain and it can be difficult, so that's fine, I'm happy to do this today instead.

        And we're here for a change of plea pursuant to a binding plea agreement, an 11(c)(1)(C) plea.

        Do I have it right, Ms. Graber?

        MS. GRABER:  You do, your Honor.

|      |                                                              |
|------|--------------------------------------------------------------|
| 1    | THE COURT:  And no interpreter is needed.                    |
| 2    | Karen, can you swear the defendant, please.                  |
| 3    | THE CLERK:  Can you stand and raise your right hand.         |
| 4    | (Defendant sworn in by the clerk.)                           |
| 5    | THE CLERK:  Thank you.  You can be seated.                   |
| 6    | THE COURT:  So, Mr. Johnson, Karen just put you under        |
| 7    | oath.  That means if you answer any of my questions falsely or |
| 8    | untruthfully, your answers could be potentially used against |
| 9    | you in a later prosecution for perjury or making a false     |
| 11:34 10 | statement.  Do you understand that?                      |
| 11   | THE DEFENDANT:  Yes, I do.                                    |
| 12   | THE COURT:  And your attorney, Ms. Fund, is right            |
| 13   | beside you.  If at any point during these proceedings you want |
| 14   | to consult with her, you let me know, and we'll make         |
| 15   | arrangements for you to do that, all right?                  |
| 16   | THE DEFENDANT:  All right.                                    |
| 17   | THE COURT:  Your full name.                                   |
| 18   | THE DEFENDANT:  Tony Delane Johnson, Jr.                      |
| 19   | THE COURT:  How old are you?                                  |
| 11:34 20 | THE DEFENDANT:  Thirty-eight.                            |
| 21   | THE COURT:  How far did you go in school?                     |
| 22   | THE DEFENDANT:  Twelfth grade.                                |
| 23   | THE COURT:  I take it you speak and understand English       |
| 24   | well enough to do this without an interpreter.               |
| 25   | THE DEFENDANT:  Yes.                                          |

| | |
|---|---|
| 1 | THE COURT:  Are you a citizen of the United States? |
| 2 | THE DEFENDANT:  Yes. |
| 3 | THE COURT:  Have been recently treated or evaluated or |
| 4 | administered any meds for mental illness, psychiatric or |
| 5 | psychological problem of any kind? |
| 6 | THE DEFENDANT:  Mental health, so -- |
| 7 | THE COURT:  Tell me. |
| 8 | THE DEFENDANT:  Bipolar, depression, ADHD I take |
| 9 | medication for.  Basically about it. |
| 11:35 10 | THE COURT:  Are any of those new diagnoses, or are |
| 11 | those things you've been diagnosed for a while? |
| 12 | THE DEFENDANT:  Those are things I've been diagnosed |
| 13 | with for a while. |
| 14 | THE COURT:  Tell me what kind of medication you take. |
| 15 | THE DEFENDANT:  Zoloft and some -- I don't know all |
| 16 | the medications that I take, but I've been on various |
| 17 | medications throughout the years, like lithium, Risperdal, |
| 18 | Depakote, so -- |
| 19 | THE COURT:  Okay.  I'm not trying to be nosy, I'm just |
| 11:35 20 | trying to make sure that you're competent to plead guilty |
| 21 | today. |
| 22 | So are any of those medications affecting your ability |
| 23 | to think clearly today? |
| 24 | THE DEFENDANT:  No. |
| 25 | THE COURT:  Okay.  And you understand why we're here? |

```
 1              THE DEFENDANT:  Yes, I do.
 2              THE COURT:  Okay.  And you understand that if you
 3    don't understand any of my questions for any reason, you just
 4    let me know, I'll give you a chance to consult with your
 5    lawyer, all right?
 6              THE DEFENDANT:  All right.
 7              THE COURT:  Okay.  And I take it -- did you take your
 8    regular medications this morning or last night?
 9              THE DEFENDANT:  Yes, I have.
11:36 10          THE COURT:  And again, they're not distracting you or
11    affecting your ability to participate today?
12              THE DEFENDANT:  No.
13              THE COURT:  Okay.  And you understand why we're here
14    today.
15              THE DEFENDANT:  Yes.
16              THE COURT:  For a guilty plea, okay.
17              And you know that there are charges pending against
18    you in an indictment.  Have you had a chance to look at that
19    indictment?
11:36 20          THE DEFENDANT:  Yes, I have.
21              THE COURT:  And you know that you're charged with and
22    are pleading guilty to two counts, Count One of the indictment,
23    which is conspiracy to distribute and possess with intent to
24    distribute 100 grams or more of heroin; and Count Six is
25    possession with intent to distribute heroin.  You understand
```

```
 1    that?
 2              THE DEFENDANT:  Yes, I do.
 3              THE COURT:  Have you had a chance to fully discuss
 4    those charges with your attorney?
 5              THE DEFENDANT:  Yes, I have.
 6              THE COURT:  And, Ms. Fund, given that we have a (C)
 7    plea here, I assume this has been taken care of.  Just to have
 8    a clear record, have you communicated all formal plea offers
 9    from the prosecution to your client?
11:37 10              MS. FUND:  Yes, I have, your Honor.
11              THE COURT:  Mr. Johnson, are you satisfied with the
12    counsel, representation, and advice you've received from your
13    lawyer?
14              THE DEFENDANT:  Yes.
15              THE COURT:  All right.  You've entered into a plea
16    agreement with the United States Attorney's Office, right?
17    Yeah?
18              THE DEFENDANT:  Yes.
19              THE COURT:  Okay.  I have a copy of the signed plea
11:37 20    agreement, and I see your signature on the last page.  You did
21    sign the last page of the plea agreement?
22              THE DEFENDANT:  Yes.
23              THE COURT:  And did you read the agreement and talk to
24    your lawyer about it before you signed it?
25              THE DEFENDANT:  Yes, I did.
```

1          THE COURT:  Ms. Graber, you want -- what I'm going to

2    have her do, Mr. Johnson, is just summarize sort of the big

3    points of your plea agreement, okay.  You're bound by

4    everything that's in the pages, but she's going to go over

5    orally sort of the main points of the agreement, okay?

6          THE DEFENDANT:  All right.

7          THE COURT:  All right.  Ms. Graber, so you want to

8    summarize the agreement, please.

9          MS. GRABER:  Thank you, your Honor.  In this binding

11:38 10  plea agreement, the defendant has agreed to plead guilty to the

11    indictment.  In exchange, the government has agreed to dismiss

12    the -- what's called the 851 information or the enhancement

13    based on Mr. Johnson's prior offense.  We will do that after

14    this hearing and before the sentencing.

15          The penalties, the maximum penalties have been laid

16    out, I know the Court goes over those later, so I'll reserve on

17    that.

18          With respect to the binding aspect of this plea

19    agreement, the parties have agreed to the defendant's offense

11:38 20  level as set forth in paragraph 4, which is that his base

21    offense level, if he is a career offender, is a 34, and that if

22    he is not a career offender, his base offense level is a 24

23    because he is responsible for at least 100 grams, but less than

24    400 grams, of heroin.  That offense level as calculated would

25    then be decreased by three.

1           However, as set forth in paragraph 5, the parties have

2    agreed to recommend incarceration and ask that the Court be

3    bound by a range of 60 to 80 months of incarceration and 48

4    months of supervised release.

5           In this agreement the defendant has waived both his

6    right to appeal his conviction and his right to appeal his

7    sentence, and he has agreed not to withdraw this plea before

8    sentencing.

9           There is a general forfeiture allegation, but no

11:39 10  specific assets.

11          And then, of course, the standard provisions on breach

12   of the plea agreement.

13          THE COURT:  All right.  So, again, Mr. Johnson, that

14   was a summary of sort of the big points of your agreement.

15          You understand that you're bound by everything that's

16   in your agreement?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Do you have any questions about your plea

19   agreement, or you think you understand the terms of it?

11:39 20         THE DEFENDANT:  No, I understand everything, no

21   questions.

22          THE COURT:  And you understand that this plea

23   agreement is the only agreement you have with the government.

24          THE DEFENDANT:  Yes.

25          THE COURT:  Do you think they've made you any other

1    promises?

2              THE DEFENDANT:  No.

3              THE COURT:  Has anyone made you any other promises to

4    get you to plead guilty here today -- threatened you, bribed

5    you, forced you in any way to plead guilty?

6              THE DEFENDANT:  No.

7              THE COURT:  Are you pleading guilty of your own free

8    will because you are, in fact, guilty?

9              THE DEFENDANT:  Yes.

11:40 10          THE COURT:  So the big point I want to make to you is

11   that this is a (C) plea, and it means that I am bound by the

12   terms of your plea agreement.  So if I accept your plea and I

13   accept your plea agreement, I will have to sentence you between

14   60 and 80 months.  My only options with a (C) plea are to give

15   it a thumbs up and do what the parties have agreed to, or give

16   it a thumbs down in which case the plea agreement essentially

17   goes away and we start over.  Do you understand that?

18             THE DEFENDANT:  Mm-hmm.

19             THE COURT:  Okay.  All right.  You understand the

11:40 20   offenses to which you're pleading guilty here today are

21   felonies?

22             THE DEFENDANT:  Yes.

23             THE COURT:  And you understand that, assuming I accept

24   your plea, you'll be judged guilty of felony offenses.

25             THE DEFENDANT:  Yes.

1          THE COURT:  You understand that once you're judged

2    guilty of felony offenses, you can lose valuable civil rights,

3    that things like the right to vote, the right to hold public

4    office, the right to serve on a jury, and the right to possess

5    a firearm.

6          THE DEFENDANT:  Yes.

7          THE COURT:  All right.  As Ms. Graber indicated, I'm

8    going to go over -- you can go ahead and talk to her.

9          (Defendant conferred with counsel.)

11:41 10          MS. FUND:  Go ahead, your Honor.

11          THE COURT:  Are you sure you're okay?

12          THE DEFENDANT:  Yeah, we're okay.

13          THE COURT:  All right.  I'm going to go over the

14    maximum penalties for the two offenses that you're charged

15    with.

16          This is a little bit of a -- kind of a random

17    exercise, because I can't sentence you up to the maximum

18    penalties.  I would have to sentence you between 60 and 80

19    months or the plea agreement goes away.  But just so we have a

11:41 20    complete record, I just want to make sure you understand what

21    the maximum penalties would be absent your plea agreement, all

22    right?

23          THE DEFENDANT:  All right.

24          THE COURT:  So Count One, the maximum term of

25    imprisonment is 40 years with a five-year mandatory minimum, a

1    $5 million fine, four years to life supervised release, a $100

2    special assessment, and there's a forfeiture allegation.

3            For Count Six, the maximum penalty is 20 years'

4    imprisonment, a $1 million fine, three years to life supervised

5    release, another $100 special assessment, and, again,

6    forfeiture.  And, as Ms. Graber also said, they're not looking

7    specifically to forfeit anything, it's a general forfeiture

8    allegation.

9            Do I have those maximum penalties right, Ms. Graber?

11:42 10            MS. GRABER:  You do.

11            THE COURT:  Mr. Johnson, what this means is if you

12    didn't have a (C) plea with the government, I would have the

13    power to sentence you up to 40 years on Count One, up to 20

14    years on Count Six, and I would have to sentence you to at

15    least five years on Count One.  Understand that?

16            THE DEFENDANT:  Yes, I do.

17            THE COURT:  And again, same thing, absent your (C)

18    plea, for supervised release I would have the power to give you

19    supervised release of up to life on both counts, but I would

11:42 20    have to give you at least four years on Count One and at least

21    three years on Count Six.  Do you understand?

22            THE DEFENDANT:  Yes, I do.

23            THE COURT:  And you understand that your agreement

24    does provide for a supervised release term, assuming I accept

25    it, 48 months or four years supervised release.

1              You understand that once you're on supervised release,

2    if you violate the conditions of your supervised release, you

3    can get additional time in prison?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Okay.  Now, your plea agreement provides

6    for a fine as recommended by the sentencing guidelines.  So I

7    would either give you a sentencing guideline fine or, if I find

8    that you don't have the ability to pay a fine, then I do have

9    the authority to waive the fine.  But under the statute, I have

11:43 10    the authority to give you up to a $5 million fine on Count One,

11    and a $1 million fine on Count Six.  Do you understand that?

12              THE DEFENDANT:  Yes.

13              THE COURT:  And again, the forfeiture, there may be

14    forfeiture consequences to your guilty plea.  You may be

15    requested to forfeit certain things, but the government doesn't

16    have anything in particular in mind right now.  You understand

17    that?

18              THE DEFENDANT:  Yes.

19              THE COURT:  And restitution, not an issue, correct,

11:44 20    Ms. Graber?

21              MS. GRABER:  That's right, your Honor.

22              THE COURT:  In addition to everything else, you're --

23    under the terms of your plea agreement and under the statute,

24    you'll be required to pay a $100 special assessment on each

25    count for a total of $200.  You understand that?

1          THE DEFENDANT:  Yes.

2          THE COURT:  So all the possible consequences of

3    pleading guilty here today -- prison, supervised release, a

4    fine, special assessment, loss of civil rights, and forfeiture,

5    do you have any questions about any of those?

6          THE DEFENDANT:  No, I don't.

7          THE COURT:  Okay.  I am going to talk to you a little

8    bit about the sentencing guidelines.  They're not hugely

9    relevant your case because you have the (C) plea, and

11:44 10   everyone's agreed that you should be sentenced between 60 and

11   80 months.  The reason I want to go over the sentencing

12   guidelines with you is when I look to decide if the 60 to 80

13   months is reasonable, I have to begin with the guidelines and

14   see what they recommend, see if it's something lower or higher

15   or if what they're recommending is within the recommended

16   guideline range.  So I want to make sure you understand them,

17   although they're not hugely relevant to whether or not I accept

18   or reject your (C) plea, all right?

19         THE DEFENDANT:  Right.

11:45 20   THE COURT:  So the sentencing guidelines are issued by

21   the United States Sentencing Commission for judges to follow

22   when figuring out an appropriate sentence in a criminal case.

23   They used to be mandatory, so I would be required to give you a

24   sentence within the guideline range, but they're no longer

25   mandatory; they're just advisory.  As I say, they're still

1   important, because when I'm trying to decide whether or not to

2   accept your (C) plea, the guidelines are one of the things that

3   I look to, okay?

4           Have you and Ms. Fund talked about the sentencing

5   guidelines and how they might apply to your case?

6           MS. FUND:  We, have your Honor.

7           THE COURT:  How about you, Mr. Johnson?

8           THE DEFENDANT:  Yes.

9           THE COURT:  You understand that I will not be able to

11:45 10   determine your advisory guideline sentencing range until after

11   Probation has prepared a presentence report?

12           THE DEFENDANT:  Yes.

13           THE COURT:  And you understand that that presentence

14   report will contain information about you, any criminal history

15   that you have, and the crimes that you're alleged to have

16   committed in this indictment?

17           THE DEFENDANT:  Yes.

18           THE COURT:  And you understand that that report will

19   also contain a recommended application of the sentencing

11:45 20   guidelines?

21           THE DEFENDANT:  Yes.

22           THE COURT:  So the way it works with this report is

23   you'll be interviewed for the report today, or soon, and then

24   Probation will prepare a report.  It will be prepared in draft.

25   The government, your lawyer, and you will all have a chance to

1    look at the draft report.  You'll make any corrections or

2    changes that you think should be made to the report.  Probation

3    will do a final report after they get those comments and you'll

4    have a chance to make objections to that final report directly

5    to me, okay?

6              So you'll have a chance to review the draft, you'll

7    have a chance to review the final, and you should do both of

8    those things to make sure that the report is accurate, okay?

9              THE DEFENDANT:  All right.

11:46 10          THE COURT:  Do you have any questions about that

11    process?

12             THE DEFENDANT:  No, I don't.

13             THE COURT:  And you understand because the guidelines

14    are not mandatory, I don't have to follow them, but I am

15    required to consider them when figuring out if what the parties

16    have agreed is an appropriate sentence is, in fact, an

17    appropriate sentence.

18             THE DEFENDANT:  Yes.

19             THE COURT:  Okay.  So because the guidelines are

11:46 20    discretionary, not mandatory, they're discretionary, I would

21    generally have the authority to sentence you anywhere up to

22    that statutory maximum, but because you have a (C) plea, I'll

23    be limited to 60 to 80 months, right?  Clear on that?

24             THE DEFENDANT:  Yes.

25             THE COURT:  And you understand that if I don't think

1      that 60 to 80 months is appropriate, then you'll be allowed to

2      withdraw your guilty plea.

3              THE DEFENDANT:  Yes.

4              THE COURT:  You understand that parole has been

5      abolished, and if you're sentenced to prison, you will not be

6      released early on parole.

7              THE DEFENDANT:  Yes.

8              THE COURT:  There's other ways to get released a

9      little bit early, but parole is not one of them.  Okay?

11:47 10             THE DEFENDANT:  All right.

11             THE COURT:  I don't know a lot of the details about

12     the exact -- the exact details of what they're charging you

13     with, I know they're drug trafficking crimes.  I don't know if

14     there's any victims, but if there are victims to your offense,

15     they'll be allowed to come to your sentencing and participate

16     either in writing or orally.  You understand that?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Okay.  So, Ms. Graber also alluded to or

19     referenced an appellate waiver.  Normally you'd have the right

11:48 20    to appeal whatever happens in this courtroom, but with an

21     appellate waiver, which you have in your plea agreement, your

22     rights to appeal are severely limited.  Do you understand that?

23             THE DEFENDANT:  Yes.

24             THE COURT:  So you can appeal if you think I make --

25     if you think there's been a monster mistake, and I'm not

1    talking about your run-of-the-mill mistakes, or if you think

2    there's been prosecutorial misconduct on the part of Ms. Graber

3    or if you think there's been ineffective assistance of your

4    attorney, but other than that, your appellate rights are

5    waived.  Do you understand that?

6            THE DEFENDANT:  Yes.

7            THE COURT:  I'm sure you understand this well, but I'm

8    going to run through it.  You don't have to plead guilty today.

9    You can go to trial on these charges.  If you decide to plead

11:48 10   guilty, once we finish this conversation your right to a trial

11   are gone and all the rights that go along with it are gone, if

12   I'm willing to let you waive your trial rights, but I want to

13   make sure you understand them before I let you waive them,

14   okay?

15           THE DEFENDANT:  Yes.

16           THE COURT:  You understand you have the right to plead

17   not guilty to any crime against you and to go to trial.

18           THE DEFENDANT:  Yes.

19           THE COURT:  You understand you'd have a right to a

11:48 20   trial by jury.

21           THE DEFENDANT:  Yes.

22           THE COURT:  You understand at trial you'd be presumed

23   to be innocent and the government would have to prove your

24   guilt beyond a reasonable doubt.

25           THE DEFENDANT:  Yes.

1    THE COURT:  Do you understand at trial you'd have the

2    right to assistance of counsel for your defense?

3    THE DEFENDANT:  Yes.

4    THE COURT:  You understand you'd have the right to see

5    and hear all the witnesses against you and have them

6    cross-examined on your behalf.

7    THE DEFENDANT:  Yes.

8    THE COURT:  You understand, if you wanted to, you

9    could testify, you could put on your own evidence.  If you

11:49 10   wanted to require someone to come to court, we would give you

11   the subpoena power so you could make them show up.

12    THE DEFENDANT:  Yes.

13    THE COURT:  And you understand that you also have the

14   right not to testify and you don't have to put on any evidence,

15   and if you choose not to testify and not to put on any

16   evidence, neither one of those things could be used against

17   you.

18    THE DEFENDANT:  Yes.

19    THE COURT:  And you understand that if you enter a

11:49 20   guilty plea here today, once we finish this conversation, I

21   accept your plea, there will be no trial and all those rights

22   we just talked about will be gone.

23    THE DEFENDANT:  Yes.

24    THE COURT:  All right.  I'm going to ask Ms. Graber to

25   do two things now.  The first thing I'm going to ask her to do

1    is go through the elements of each offense.  So this is what

2    the government would have to prove beyond a reasonable doubt

3    for you to be convicted at trial.  Okay?

4            MS. GRABER:  With respect to Count One, which charges

5    the defendant in a conspiracy to distribute and to possess with

6    intent to distribute 100 grams or more of heroin, the

7    government would first have to prove that the agreement

8    specified in the indictment, and not some other agreement or

9    agreements, existed between at least two people; that is, to

11:50 10   possess with intent to distribute and to distribute heroin.

11           Second, that the defendant willfully joined that

12   agreement.  And as specifically charged in this indictment with

13   respect to this defendant, Mr. Johnson, the government would

14   also have to prove that 100 grams or more of heroin was

15   reasonably foreseeable to and attributable to this defendant.

16           With respect to Count Six, which is possession with

17   intent to distribute heroin, the government would first have to

18   prove on the date alleged in the indictment, the defendant

19   possessed heroin, either actually or constructively; and

11:50 20   second, that he did so with a specific intent to distribute

21   that heroin.

22           THE COURT:  So that's what they'd have to prove beyond

23   a reasonable doubt.

24           Do you have any questions about any of the elements of

25   the offense?

1          THE DEFENDANT:  Um, no.

2          THE COURT:  Okay.  What I'm going to have her do

3     now -- so she's told you what she has to prove, now she is

4     going to tell you how she would do it.  This is the factual

5     basis to support your plea.  I want to you listen carefully,

6     because afterwards I'm going to turn back to you and ask you if

7     you disagree with anything she said.

8          THE DEFENDANT:  Okay.

9          THE COURT:  Go ahead, Ms. Graber, please.

11:51 10          MS. GRABER:  Your Honor, had this case proceeded to

11     trial, the government would have proven the following facts

12     beyond a reasonable doubt:

13          In August 2018, agents with the Drug Enforcement

14     Administration, assisted by officers from the Barnstable Police

15     Department, commenced an investigation into Edwin Otero, who is

16     a violent Cape Cod drug dealer.

17          In March 2019, agents obtained authorization to

18     intercept one of Otero's cellular telephones.  Based on those

19     interceptions, investigators determined that Otero was using a

11:51 20     second telephone.

21          So, in April of 2019, investigators received

22     authorization to renew interceptions over the first telephone

23     and begin interceptions over the second.

24          Those interceptions in total revealed that Mr. Otero,

25     in coded language, arranged to distribute and did distribute

1    heroin on a daily basis.

2            Interceptions from Otero's cellular telephones

3    identified ten other members of the drug trafficking network.

4    These included Justin Joseph, who agents identified as Otero's

5    top lieutenant; Kimberly Lopes, who is Otero's mother, who

6    distributed heroin for Mr. Otero; and Anthony Basilici and

7    Vanicius Zangrande, who were other members of the drug cell who

8    provided Otero with logistical support.

9            In particular, the agents also identified a number of

11:52 10    drug traffickers or resuppliers who were supplied by Otero,

11    including Krymeii Fray, Brooke Cotell, Ronny Baams, Eric

12    Brando, Joshua Johnson, and this defendant, Joshua Johnson.

13            For example, during the intercepts on April 3, 2019,

14    investigators intercepted a call in which Mr. Johnson

15    complained about the quality of the heroin that Mr. Otero had

16    delivered because it was different than the time before.  He

17    said, quote, What's pissing me off, bro, it's not like it was

18    the first time.

19            Mr. Otero explained that he gave Mr. Johnson, quote,

11:53 20    two different ones.  One of which had a, quote, different kind

21    of mix tape on it.

22            This defendant responded -- and I apologize for the

23    profanity -- I don't want shit with different mix tapes, bro,

24    that's what's fucking killing my dogs.

25            Otero responded saying, Remember I told you I was

1    going mix that other kind of music into it, and you said, Yeah.

2        Investigators who have testified that Mr. Johnson and

3    Mr. Otero were discussing the quality of the heroin that Otero

4    had provided to Johnson, and they were discussing whether there

5    should be cutting agents or other drugs mixed into that heroin.

6    Specifically, investigators believed that Mr. Johnson was

7    telling Mr. Otero not to mix fentanyl into the heroin because

8    that was what was killing people.

9        Later that day, Mr. Johnson called Mr. Otero again and

11:53 10    said that he had approximately $3,500 to give to Mr. Otero.

11    Investigators would estimate that this $3,500 would purchase

12    anywhere between 30 and 70 grams of heroin, depending.

13        Additionally, on May 14 to 16, 2019, agents

14    intercepted a series of calls in which Mr. Johnson negotiated

15    for the purchase of approximately 200 grams of heroin from

16    Otero.  Mr. Johnson agreed to purchase 100 grams and wanted

17    Otero to front him, or give him on consignment, the remaining

18    100 grams.  He said, I'm going to buy a hundred of the other

19    shit and you're going to give me a hundred.  Let's keep it a

11:54 20    hundred, right.  I don't want none of that shit that's mother

21    fucking stepped on like a stepchild, man.  I'm saying I want

22    the mother fucking shit I can get out moving and grooving, know

23    what I'm saying?

24        Investigators would testify that Mr. Johnson was

25    asking Otero for heroin that was unadulterated with cutting

1    agents when he said he didn't want it to be, quote, stepped on,

2    and would further testify that Mr. Johnson was talking about

3    making drug deals when he explained that he wanted to get out

4    there moving and grooving.

5            Investigators were unable to confirm whether this

6    transaction actually occurred on these dates in question.

7    However, when they executed the arrest warrants and a consent

8    search at Mr. Johnson's residence on May 20, 2019, which is a

9    week after the discussions we just discussed, investigators

11:55 10   located approximately 30 grams of heroin in the defendant's

11   residence.

12           In total, the investigators believe that the calls and

13   seizures -- based on the calls and seizures that Johnson is

14   responsible for at least 100 to 200 grams of heroin.

15           Those are essentially the facts.

16           THE COURT:  All right.  Do you disagree with anything

17   she said, Mr. Johnson?

18           THE DEFENDANT:  No.

19           THE COURT:  Sure?

11:55 20         THE DEFENDANT:  Yeah, I'm sure.

21           THE COURT:  Okay.  All right.  And do you agree that

22   the total drug weight for which you're responsible is in excess

23   of 100 grams of heroin?

24           THE DEFENDANT:  Yes.

25           THE COURT:  All right.  So what -- go ahead.

1           (Defendant conferred with counsel.)

2           THE COURT:  Okay.

3           THE DEFENDANT:  All right.  We're clear.

4           THE COURT:  Okay.

5           So I'm prepared to take your guilty plea.  What I'm

6      going to do today is accept your guilty plea but defer

7      acceptance of the plea agreement, and then if I do decide to

8      reject the plea agreement after I see the presentence report,

9      the guilty plea goes away, too.  But I'm going to accept the

11:56 10     plea, defer on the agreement.

11          Now that we've had this conversation, do you still

12     want to plead guilty?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Okay.  And you understand that I'm

15     accepting your guilty plea and I'll read the presentence report

16     and then decide whether or not I'm okay with the agreement,

17     right?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And if I reject the plea agreement, you'll

11:56 20     have an opportunity to withdraw your guilty plea and change

21     your plea to not guilty or renegotiate with the government, all

22     right?

23          THE DEFENDANT:  All right.

24          THE COURT:  Ms. Graber, do you know of any reason why

25     this plea should not go forward?

1          MS. GRABER:  No, your Honor, thank you.

2          THE COURT:  Ms. Fund?

3          MS. FUND:  No, your Honor.

4          THE COURT:  It's the finding of the Court in the case

5     of United States v. Joshua Johnson that Mr. Johnson is fully

6     competent and capable of entering an informed plea.  He's aware

7     of the nature of the charges and the consequences of the plea,

8     and his plea of guilty will be knowing and voluntary supported

9     by an independent basis in fact containing each of the

11:57 10    essential elements of the two offenses charged against him.

11          Karen, you can take the plea, please.

12          THE CLERK:  Can you please stand.

13          Mr. Johnson, in criminal matter 19-10245, you are

14    charged in two counts of a superseding indictment which you

15    have previously pled not guilty.

16          Do you now wish to change your plea?

17          THE DEFENDANT:  No.

18          You're talking about the guilty, yeah, my bad.

19          THE CLERK:  As to Count One, you are charged with

11:57 20    conspiracy to distribute and to possess with intent to

21    distribute 100 grams or more of heroin in violation of Title

22    21, United States Code, Section 846.  As to Count Six, you are

23    charged with possession with intent to distribute heroin in

24    violation of Title 21, United States Code, Section 841(a)(1).

25    How do you wish to plead to Counts One and Six, guilty or not

1    guilty?

2              THE DEFENDANT:  Guilty.

3              THE COURT:  Okay.  The plea is accepted.  I'm

4    deferring on the plea agreement for Mr. Johnson has been

5    adjudged guilty of two owe offenses.  You can sit down

6    Mr. Johnson and Ms. Fund.

7              All right.  Mr. Johnson, as I told you, there will be

8    a presentence report prepared by Probation.  You're going to be

9    interviewed for that report.  You have the right to have an

11:58 10   attorney present with you during that interview if you want her

11   there.  You don't have to have her there, but it is right to

12   have an attorney present if you want her to be there.

13              Super important that the report be accurate because it

14   can affect what sentence you receive within that range, it can

15   affect whether or not I accept the agreed-upon disposition, it

16   can also can effect what happens after your sentence, where you

17   are housed, what kind of programming is available to you, that

18   sort of thing.  So you want to take a close look at the report

19   and let her know if anything in it should be corrected.  Again,

11:59 20   you'll have a chance to make objections to the draft to the

21   final report.

22              When we get to sentencing, you and your attorney both

23   have the right to speak on your behalf.  I'm always interested

24   in what a defendant has to say at sentencing, so I hope you'll

25   give some thought to speaking, give some thought to what it is

1    you might want to say.

2           In the meantime I'm going to refer you to Probation

3    for the preparation of the report.  They usually -- they're

4    asking for 12 weeks, we're going back to 12 weeks.

5           Does that time frame for work you, Ms. Fund?

6           MS. FUND:  It does, your Honor.

7           THE COURT:  Karen, let's give them a date, please.

8           THE CLERK:  How about April 5th at 12:00 p.m.

9           MS. GRABER:  That's fine for the government, thank

11:59 10   you.

11          MS. FUND:  That's fine.

12          THE COURT:  What did you say, April 5th at 12:00?

13          THE CLERK:  Yes.

14          THE COURT:  Okay.

15          So, Mr. Johnson, we'll see you in April, okay.

16          THE DEFENDANT:  All right, then.

17          THE COURT:  In the meantime, take care.

18          THE DEFENDANT:  You, too.  Happy New Year's.

19          THE COURT:  You're very charming, you know that?  In

12:00 20   your own way, you're very charming.  Take care of yourself.

21   We'll see you in April.

22          MS. FUND:  Thank you, your Honor.

23          (Court adjourned at 12:00 p.m.)

24                  - - - - - - - - - - - -

25

1                              CERTIFICATION

2              I certify that the foregoing is a correct transcript

3     of the record of proceedings in the above-entitled matter to

4     the best of my skill and ability.

5

6

7

8     /s/Debra M. Joyce                    October 15, 2023
      Debra M. Joyce, RMR, CRR, FCRR       Date
9     Official Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25